**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**BLUEFIELD**

**CHRISTOPHER S. MULLINS, et al.,**
**Plaintiffs,**

**v.** **CIVIL ACTION NO. 1:09-cv-00704**

**GMAC MORTGAGE, LLC, et al.,**
**Defendants.**

**MEMORANDUM OPINION AND ORDER**

Before the court is defendants' motion for judgment on the pleadings (Docs. # 40 & 41). For reasons more fully set forth below, the court **DENIES** defendants' motion.

**I. Factual and Procedural Background**

This case centers on a dispute between plaintiffs Christopher and Tara Mullins ("Mullins") and defendants GMAC Mortgage and John Doe Holder (referred to herein as "GMAC") related to GMAC's foreclosure on the Mullins' home in West Virginia.

The Mullins' purchased their West Virginia home in 2007 using a loan from GMAC in the amount of $86,878. The parties executed a Note and a Deed of Trust at the time of the transaction. Due to a loss of income, plaintiffs became unable to make their monthly loan payments sometime around the middle of 2008, although the exact date is not specified in the pleadings. In or around October 2008, the Mullins' applied to GMAC for a loan modification, in order to make their loan payments more

affordable. During the same month, GMAC allegedly told the Mullins' that they had been approved for a loan modification and they need not worry about losing their home. Plaintiffs submitted the requested documentation to complete the loan modification. In late 2008 and early 2009, the Mullins' contacted GMAC several times to ask for an update on their loan modification. Plaintiffs allege that GMAC at that point started to tell them that their loan modification application was under review, instead of already approved. Although the Mullins' offered to make payments during this period, GMAC asked them to wait until its review of the loan modification application was complete.

In early March 2009, GMAC sent plaintiffs a notice of foreclosure. Plaintiffs once again contacted GMAC and offered to make further payments. GMAC allegedly continued to refuse the payments. Despite the arrival of the foreclosure notice, GMAC allegedly told the Mullins' to ignore the letter and assured them yet again that they would be approved for a loan modification and would not lose their home. On April 12, 2009, plaintiffs received a letter setting the foreclosure sale of their home for April 21, 2009. Plaintiffs once again contacted GMAC. During their conversation, GMAC allegedly told plaintiffs that GMAC had no loan modification application from the Mullins' in their possession. GMAC did, however, postpone the foreclosure sale to

May 29, 2009. On or about April 22, 2009, plaintiffs once again spoke with GMAC, and GMAC informed them that they had not been approved for a loan modification and the foreclosure would proceed as scheduled.

Plaintiffs filed their Complaint in the Circuit Court of Kanawha County, West Virginia, on May 15, 2009, seeking various kinds of relief for the loss of their home and the stress and anxiety they experienced as a result of the loan modification and foreclosure process. Defendants then removed the action to federal district court, invoking diversity jurisdiction, pursuant to 28 U.S.C. § 1332. On April 8, 2010, defendants filed a motion to dismiss plaintiffs' complaint. Both parties later submitted a joint motion requesting that the court convert the motion to dismiss to a motion for judgment on the pleadings. By Order dated April 27, 2010, the court granted the parties' request. The same day, plaintiffs moved to amend their Complaint, which request the court granted. On July 27, 2010 plaintiffs filed their First Amended Complaint. Further, on August 20, 2010, plaintiffs filed a notice of dismissal of Count V of their Amended Complaint (intentional infliction of emotional distress).

## II. Analysis

It is well-settled that a Rule 12(c) motion for judgment on the pleadings "is decided under the same standard as a motion to dismiss under Rule 12(b)(6)." Deutsche Bank v. Nat'l Trust

Co. v. IRS, No. 08-2259, 2010 U.S. App. LEXIS 872, *5 (4th Cir. 2010); Demetry v. Lasko Prods., 284 Fed. Appx. 14, 15 (4th Cir. 2008); Comm. Steam Cleaning, LLC v. Ford Motor Co., No. 08-1073, 2010 U.S. Dist. LEXIS 41372 *6 (S.D.W. Va. 2010).

In order to survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Under Iqbal's exacting standards, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949.

GMAC's motion for judgment on the pleadings challenges the sufficiency with which each of the Mullins' claims have been pled. The court will address each claim in turn.

*A. Breach of Contract*

In their Amended Complaint (Doc. # 39), plaintiffs allege that defendants committed breach of contract by (a) failing to "engage in appropriate loss mitigation efforts" instead of foreclosing on plaintiffs' house, as the Deed of Trust expressly requires of them; and (b) failing to act in accordance with their "implied contractual duty to act in good faith." See Amended Complaint, pp. 5-6.

Express Breach of Contract

Plaintiffs' claim for express breach of contract centers on language found in Paragraph 9 of the Deed of Trust, which states that United States Department of Housing and Urban Development ("HUD") regulations may limit the lender's right to require immediate payment from the borrower or initiate rapid foreclosure proceedings against the borrower's house where a borrower has fallen behind on his payments. See Deed of Trust, Attached as Exhibit A to Defendant's Motion for Judgment on the Pleadings (Doc. # 40-1), para. 9. The Deed of Trust specifically states that "[t]his Security Instrument does not authorize acceleration of foreclosure if not permitted by regulations of the Secretary." See id. Plaintiff alleges that at least one HUD regulation requires "mortgage loan servicers of FHA-insured mortgages to consider borrowers for a host of loss mitigation alternatives prior to pursuing foreclosure." See Amended Complaint, p. 3, para. 12(d). Plaintiffs contend that since defendants did not consider such loss mitigation alternatives, but rather foreclosed on their West Virginia home, defendants violated HUD regulations, and thereby took action against plaintiffs which defendants were barred from taking under the express language of the Deed of Trust. See Amended Complaint, pp. 3-4, para. 14(5), 15.

The elements of a breach of contract claim in West Virginia are: (1) a contract exists between the parties; (2) the defendant

failed to comply with a term in the contract; and (3) damage arose from the breach. See, e.g., Wince v. Easterbrooke Cellular Corp., 681 F. Supp. 2d 688, 693 (N.D.W. Va. 2010). Plaintiffs have pled sufficient factual matter to satisfy the pleading requirements for two of these elements: neither party disputes that they have a contract, and the plaintiffs suffered damage by losing their home. Whether defendants have failed to comply with a term in the contract, the court concludes that plaintiffs have pled enough in their Amended Complaint to survive a motion for judgment on the pleadings. First, plaintiffs point to specific language in the Deed of Trust which conditions a lender’s right to accelerate payment or foreclosure on the lender’s compliance with HUD regulations. Second, Plaintiff then states that there is at least one applicable HUD regulation, which required defendants to do more before they foreclosed on plaintiffs’ house. Accepting the factual allegations as true, the court concludes that plaintiffs have pled their express breach of contract claim with sufficient particularity.

Defendant’s attempt to characterize plaintiffs’ claim as a third-party beneficiary challenge is unavailing. Plaintiffs here are not suing on a contract between GMAC and HUD, but rather on the contract that they themselves entered into with GMAC. As such, plaintiffs are parties to that contract, and are suing based on language expressly contained in the contract itself.

Further, defendants' argument that plaintiffs lack standing to bring a cause of action for the failure of GMAC to comply with HUD regulations also misses the mark. Quite simply, plaintiffs are suing under a straightforward state law contract theory, alleging that defendants did not uphold their end of the contractual bargain. Plaintiffs are not, as defendants would have the court believe, suing to enforce HUD regulations under some vague and likely non-existent cause of action allowing a member of the public to take upon himself the role of regulatory enforcer. These two theories of recovery are distinct and unrelated, as Judge Williams thoughtfully concludes in Kersey v. PHH Mortgage Corp., 682 F. Supp. 2d 588, 596-97 (E.D. Va. 2010).

Breach of Implied Covenant to Act in Good Faith

Plaintiffs allege that throughout the loan modification review and foreclosure proceedings, defendants failed to comply with their "implied contractual duty to act in good faith." Under West Virginia law, a cause of action for breach of an implied covenant of good faith and fair dealing "will live or die by the breach-of-contract claim. . . ." Clendenin v. Wells Fargo Bank, No. 2:09-cv-00557, 2009 U.S. Dist LEXIS 109952, at *11-13 (S.D.W. Va. Nov. 24, 2009). Accordingly, since the court will allow the plaintiffs' express breach of contract claim to proceed, the court will also allow the plaintiffs' breach of

implied covenant to act in good faith claim to go forward as well. See id.

First Breach Rule

GMAC also argues that plaintiffs' breach of contract claim should be dismissed because under the first breach rule, a party already in breach of a contract cannot require performance from the other party. GMAC argues that since the Mullins' breached the contract they had with GMAC when they failed to make their loan payments, they cannot now sue GMAC for an alleged breach of contract on GMAC's part.

An exception to the first breach rule exists where the first breach was not a material breach. Kersey, 682 F. Supp. 2d at 597. In turn, "a material breach is a failure to do something that is so fundamental to the contract that the failure to perform that obligation defeats an essential purpose of the contract." Id.

Although the Kersey court did not conclusively decide this issue – since the parties did not formally raise it in their pleadings – it considered whether plaintiff's failure to make payments under an FHA-insured mortgage can constitute a material breach. The court noted,

> Indeed, the fact that the contract specifically contemplates the Plaintiff falling into arrears by imposing obligations on the Defendant to do certain things in the event of arrearage prior to commencing

> foreclosure suggests that simply falling into arrears on the note is not a material breach.

Id. As plaintiffs also point out, it would be illogical to conclude that a plaintiff who has fallen behind on payments could not sue a lender for the lender's failure to comply with applicable HUD regulations limiting the actions the lender may take when the borrower falls into arrearage. To hold that the first breach rule precludes such a suit would effectively render the provision of the Deed of Trust requiring GMAC to abide by HUD regulations ineffective and unenforceable. The language of the contract specifically creates obligations on GMAC's part in case of the borrower falling behind on payments. To apply the first breach rule here would contravene the limited rights and remedies scheme for the lender that the contract envisions.

*B. Fraud*

Defendant argues that plaintiff has failed to state with sufficient particularity facts that would entitle plaintiff's fraud claim to go forward.

Under Federal Rules of Civil Procedure 9(b), "a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." To satisfy the 9(b) standard, a plaintiff "must, at a minimum, describe the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he

obtained thereby." United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 379 (4th Cir. 2008) (quoting Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999)) (internal quotation marks omitted). "These facts are often referred to as the who, what, when, where, and how of the alleged fraud." Id. (internal quotation marks omitted).

The court finds that plaintiffs have pled their fraud claim with the requisite particularity.

First, plaintiffs describe the contents of each individual telephone conversation they had with GMAC's employees. Although it may have been desirable for the plaintiffs to make a note of the name of the GMAC employee they spoke with on each occasion, the court finds that this is not fatal to the plaintiffs' claim. Ascertaining the identity of an individual person may not always be feasible. Second, plaintiffs state the time period in which the conversations took place with reasonable accuracy (to the month). Third, plaintiffs' allegations strongly suggest that GMAC's desire to foreclose on the house instead of allowing a new payment schedule was the motivating reason for its allegedly fraudulent conduct.

The court finds this case distinguishable from the factual situation in Jones v. Home Loan Investment Bank, No. 2:09-0537, 2009 U.S. Dist. LEXIS 65500, at *5-7 (S.D.W. Va. July 29, 2009), in which the plaintiffs accused the defendant lender of

fraudulently inducing them to refinance their home. Id. at 6. First, the Jones plaintiffs' Complaint lacked a specific description of the contents of the lender's allegedly fraudulent representations. Second, the Jones court considered it fatal that plaintiffs in that case failed to state when the allegedly fraudulent statements were made, and by whom. Id. at 7. With regard to timing, the plaintiffs in Jones cited the relevant time frame as being "Sometime before January 2007 . . . ." Id. By contrast, plaintiffs in the instant case have identified the relevant time to a specific month. Further, as the court has already explained, plaintiffs' inability to cite the names of the various GMAC agents they spoke with is reasonable in this context and therefore will not preclude plaintiff's fraud claim from going forward.

*C. Negligent Misrepresentation*

Plaintiffs assert that GMAC's initial statement that plaintiffs had been approved for a loan modification - a statement that later turned out to be false - constitutes negligent misrepresentation on the part of GMAC.

Under West Virginia law, "[o]ne under a duty to give information to another, who makes an erroneous statement when he has no knowledge on the subject, and thereby misleads the other to his injury, is as much liable in law as if he had intentionally stated a falsehood." Folio v. City of Clarksburg,

221 W. Va. 397, 405-406 (W. Va. 2007) (citing James v. Piggott, 70 W. Va. 435, 74 S.E. 667 (1910)).

Defendants argue that plaintiffs cannot state a claim for negligent misrepresentation against GMAC, because GMAC effectively had no duty to execute a loan modification with plaintiffs. The court finds that GMAC has misconstrued plaintiffs' argument. The asserted duty here is not a duty to enter into a loan modification. Instead, it is the duty to provide truthful and accurate information. See Amended Complaint, p. 11. As Judge Copenhaver explained in a similar case,

> Defendants also maintain that Corder's negligent misrepresentation claim fails because BAC had no duty to enter into a loan modification agreement with Corder. (Def.'s Mem. Supp. Mot. Dismiss 5). This argument simply misses the mark. Corder does not allege that BAC had a duty to enter into a loan modification agreement with him. Rather, he contends that BAC had a duty "to provide him with accurate information about the status of his loan account," and that BAC breached that duty by making negligent misrepresentations regarding the status of Corder's loan modification and BAC's decision to foreclose on the property. (Compl. ¶¶ 31-34). In other words, while BAC was not obligated to modify the loan, it was obligated, Corder asserts, to make truthful representations in its dealings with Corder. Defendants' contentions mischaracterize Corder's allegations and therefore must be rejected. Accordingly, defendants' motion to dismiss Count III is denied.

Corder v. Countrywide Home Loans, Inc., 2011 U.S. Dist. LEXIS 7669, 18-19 (S.D. W. Va. Jan. 26, 2011). The court finds that on this claim as well plaintiffs have pled sufficient facts to allow their negligent misrepresentation claim to go forward.

*D. Estoppel*

Defendant asserts that in West Virginia, a plaintiff cannot maintain a cause of action for estoppel. Instead, defendant argues, estoppel is a defense. The court rejects defendant's contention. Under West Virginia law, "Promissory estoppel, fraudulent misrepresentation, and other causes of action [...] are still viable." Foster v. Orchard Dev. Co., LLC, 2010 W. Va. LEXIS 145, 38-39 (W. Va. Nov. 23, 2010) (Ketchum, J., concurring).

GMAC also argues that any oral promise for a loan modification that GMAC may have made to plaintiffs is unenforceable because the West Virginia statute of frauds requires that such an agreement be made in writing. In support of its proposition, defendant cites W. Va. Code § 36-1-3 and Conley v. Johnson, 213 W. Va. 251, 254 (2003). Section 36-1-3 provides that "no contract for the sale of land, or the lease thereof for more than one year, shall be enforceable unless the contract or some note or memorandum thereof be in writing and signed by the party to be charged thereby, or by his agent." W. Va. Code § 36-1-3 The statutory language and the case cited

by GMAC cover a much narrower class of contracts than the one defendant is attempting to include here. A representation that GMAC may have made to plaintiffs that they had been approved for a loan modification does not qualify as a "contract for the sale of land, or the lease thereof." Accordingly, defendant's statute of frauds argument is unavailing and will not prevent plaintiffs' claim from proceeding.

*F. Illegal Debt Collection*

Defendant argues that plaintiffs have failed to state a claim for illegal debt collection, because defendant had no duty to execute a loan modification in the first place. As the court has already discussed above, plaintiffs' allegation that the defendant violated certain HUD regulations incorporated into the contract casts doubt on GMAC's argument that it had no duty to modify plaintiffs' loan. See supra, pp. 4-6. As such, defendant's contention that plaintiffs have failed to state a claim for illegal debt collection is unavailing.

*G. Equity Abhors a Forfeiture*

Defendant seeks dismissal of plaintiffs' equity abhors a forfeiture claim, insisting that "it is a principle of equity not a cause of action," and because "GMAC was not required by contract or law to pursue alternatives to foreclosure." See Defendant's Memorandum in Support of Its Motion for Judgment on

the Pleadings, p. 19. In a similar case, Chief Judge Goodwin resolved this precise issue by explaining that,

> "[r]ather than stating its own cause of action, Count IV is a detailed request for equitable relief. It is wholly dependent on the success of the other claims in the Complaint. Should the [plaintiffs] prevail on those other claims, the relief sought in Count IV may be appropriate.

Clendenin, 2009 U.S. Dist LEXIS 109952, at *14. As the court has already determined that the rest of plaintiffs' claims may proceed, the court will allow plaintiffs' equity abhors a forfeiture to proceed as well.

## III. Conclusion

Having found that plaintiffs have pled factual allegations relating to their claims with sufficient particularity to survive a motion for judgment on the pleadings, the court hereby **DENIES** defendants' motion.

The Clerk is directed to forward a copy of this Memorandum Opinion and Order to all counsel of record.

It is SO ORDERED this 31st day of March, 2011.

ENTER:

David A. Faber
Senior United States District Judge